# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### NORTHERN DIVISION

| | | |
|---|---|---|
| ANN M. BUCKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:11CV56MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Michael J. Astrue denying the application of Plaintiff Ann M. Buckman for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Plaintiff filed a Brief in Support of the Complaint. Doc. 11. Defendant filed a Brief in Support of the Answer. Doc. 12. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 8.

## I.
## PROCEDURAL HISTORY

On February 22, 2008, Plaintiff filed an application for benefits, alleging a disability onset date of December 17, 2007. Tr. 56-57, 101-109. On June 16, 2008, Plaintiff's claim was denied. Tr. 55-61. On August 18, 2008, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Tr. 24. On January 22, 2010, a hearing was held before an ALJ. Tr. 25-54. By decision, dated March 22, 2010, the ALJ found that Plaintiff was not disabled prior to June 24, 2009, and that she was disabled as of that date. Tr. 7-23. On June 9, 2011, the Appeals Council denied Plaintiff's

request for review. Tr. 1-4. As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.

2

Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d

65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject

to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).

The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use

of the Medical-Vocational Guidelines (Guidelines) is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was fifty-one years old on her alleged onset date, alleges disability due to a combination of impairments, including bipolar disorder, hypertension, attention deficit hyperactivity disorder (ADHD), degenerative arthritis of the knees, obesity, degenerative disc disease in the cervical spine, pain in her hand, sleep apnea, and chronic occipital headaches. Plaintiff testified at the hearing that she had one year of college; that she was 5'3" and weighed 163 pounds; that she last worked full time in December 2007; that she worked for twenty-five years in automobile parts manufacturing, until she was laid off; that she was scheduled for bilateral knee replacements; and that she needed surgery because her hand tingled. Tr. 29-30.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 17, 2007; that Plaintiff had the severe impairments of degenerative arthritis of the knees, obesity, degenerative disc disease in the cervical spine, bipolar disorder, and ADHD; that, prior to June 24, 2009, Plaintiff did not have an impairment or combination of impairments that

met or equaled a listed impairment; that, prior to June 24, 2009, Plaintiff had the RFC for light work, except that she could understand, remember, and carry out unskilled work with occasional interaction with co-workers and the general public; that, beginning June 24, 2009, Plaintiff's cervical spine condition worsened and that, as of this date, Plaintiff's allegations regarding her symptoms were "generally credible"; that, since December 17, 2007, Plaintiff was unable to perform past relevant work; that, based on the testimony of a VE, prior to June 24, 2009, there were jobs which existed in significant numbers in the national economy which Plaintiff could perform; that, commencing June 24, 2009, there were no jobs which Plaintiff could perform; that, therefore, Plaintiff was not disabled prior to June 24, 2009, but she became disabled on that date; and that Plaintiff continued to be disabled through the date of the decision.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ found Plaintiff not fully credible, because the ALJ did not properly weigh opinion evidence, because the ALJ did not properly determine Plaintiff's RFC, because the ALJ failed to call a "medical advisor to determine the onset of Plaintiff's impairments," because the ALJ failed to consider the effect of Plaintiff's obesity on her ability to work, and because the ALJ's decision at Step 5 was flawed.

A.      **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20

C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams , 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ considered that, although Plaintiff claimed to suffer disabling back pain, her

only treatment for back or neck pain between December 1, 2007, and June 24, 2009, was one visit to a chiropractor in April 2008, at which time the chiropractor recommended breast reduction surgery. Tr. 19, 274. Additionally, the ALJ considered, in regard to Plaintiff's allegation that she suffered from "chronic occipital headache," that the evidence "only corroborat[ed] two episodes within a year of each other for any subjective complaint of headache. Tr. 14. In particular, the ALJ considered that, in August 2008, Plaintiff went to the emergency room and was treated and released for a suspected migraine. The ALJ also considered that the next mention of headache was in June 2009. Tr. 347. Notes from Monroe City Family Practice, dated June 25, 2009, reflect that Plaintiff presented with sleeping difficulty and reported headache "different from migraine pain." Tr. 339-40. Additionally, the ALJ considered, in regard to Plaintiff's knee pain, that Benjamin Holt, M.D., reported on September 24, 2009, that Plaintiff's knee pain had only become "severely worse over the past three months." Tr. 21, 327. Moreover, the record does not reflect that Plaintiff had diagnostic imaging of her knees until June 2009. Tr. 19, 232-507. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322. The court finds that the ALJ's decision, in this regard, is based on substantial evidence, and that it is consistent with the regulations and case law.

Second, the ALJ considered inconsistencies between the objective medical evidence and Plaintiff's allegations. A factor to be considered when determining a claimant's credibility is the absence of objective medical evidence, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir.2008)). In

this regard, the ALJ considered the factors mentioned above in regard to Plaintiff's lack of regular treatment. Additionally, the ALJ considered that Plaintiff saw Ben Lee Jolly, M.D., in October 2007 and February 2008 for knee pain; that Dr. Jolly reported that Plaintiff would need knee replacement surgery "when the time comes"; and that Dr. Jolly provided injections. Tr. 19, 259-60. The ALJ also considered that when Dr. Jolly said, in October 2007 and February 2008, that Plaintiff would need knee surgery, his notes did not include objective examination findings or test results. Tr. 19, 259-60. Further, Dale Zimmerman, D.O., diagnosed Plaintiff with degenerative joint disease of the knees on June 11, 2008. Dr. Zimmerman reported on this date that Plaintiff was *stable* and *prescribed walking*. Tr. 303. An August 6, 2008 physical therapy evaluation states that Plaintiff had flexibility in the left and right hamstrings of ninety degrees; that her gait was "WFL" and that her general strength was 5/5 in all planes with the exception of left "gastroc" and left "hip ext," in which it was 4+/5 and "B hip abd," in which her strength was 4/5. Tr. 405-407.

As considered by the ALJ, Plaintiff was not diagnosed for degenerative cervical disease until June 25, 2009, based on x-rays. Tr. 14, 350. In regard to Plaintiff's complaint of sleep apnea, the ALJ considered that there is no medical evidence to corroborate this condition. Tr. 15. In regard to Plaintiff's alleged hypertension, the ALJ considered that a reference to hypertension in the record reflects that Plaintiff had a family history of hypertension and that, when Plaintiff had an MRI following an incident of dizziness and confusion, Plaintiff's doctor subsequently implied that Plaintiff's single episode was attributable to hypertension. Tr. 14. The court notes that Dr. Zimmerman reported, in December 2008, that Plaintiff's blood pressure was 124/78; in August 2008, that Plaintiff's blood pressure was 116/70; and in March 2009, that it was 112/74.Tr. 342, 345, 347. See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (holding that a high blood pressure

reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure which measures within the range of 140-180/90-115 is considered mild or moderate, and that hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney) (citing 20 C.F.R. pt. 404, subpt, P, app. 1, 4.00 C). The court finds that the ALJ's findings regarding the lack of objective medical evidence is based on substantial evidence and that it is consistent with the regulations and case law.

Third, the ALJ considered that Plaintiff did not stop working due her alleged disability. Tr. 17. Plaintiff testified that she stopped working because she was laid off. Tr. 29. The court notes that a physical therapy evaluation, dated August 6, 2008, states that Plaintiff was "currently laid off and probably [would] be laid off permanently. Will *need to find a job* but no leads." Tr. 405 (emphasis added). Also, on January 3, 2008, Plaintiff told her therapist that she stopped working due to pneumonia and strep. Tr. 423. Jeffrey Harden, D.O., who saw Plaintiff for a psychiatric evaluation on December 22, 2009, reported that Plaintiff said that she was laid off from her most recent job "due to a company wide reduction of their work force." Tr. 353. Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). The court finds that the ALJ's decision, in this regard, is based on substantial evidence, and that it is consistent with the regulations and case law.

Fourth, the ALJ considered Plaintiff's daily activities and that they were inconsistent with her allegations. Tr. 17. In particular, as considered by the ALJ, Plaintiff lived alone, completed household chores "a little at a time," shopped, paid bills, watched television, walked, listened to music, and read science fiction. Tr. 17, 34. Dr. Harden reported, on December 22, 2009, that Plaintiff "reside[d]

13

autonomously " and that, "in terms of current day to day functioning," she was "capable of doing her own driving, cooking and laundry." He also reported that Plaintiff said she could manage her own medications and that she "stopp[ed] by the local bar one to two times per week to talk to friends of hers." Tr. 353. Further, it was reported on August 6, 2008, that Plaintiff's hobbies included listening and recording music, walking, and reading. Tr. 405. While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy, 953 F.2d at 386; Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis, 239 F.3d at 967 (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [her] activities diminish [her] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen, 75 F.3d at 439-41 (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard and that it is consistent with the regulations and case law.

Fifth, the ALJ considered that, although Plaintiff alleged that she was unable to process information and that she had crying spells, tearfulness, and mood swings, treatment notes reflect that Plaintiff's mental impairments were well-controlled by medication. Tr. 20. Additionally, James T. Brocksmith, D.O., reported on November 3, 2009, that Plaintiff's hypertension was being treated and *controlled* and that Plaintiff had a history of bipolar disorder and chronic depression with ADHD, which were "*well controlled with current regimen.*" Tr. 330. (emphasis added). Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug, 578 F.3d at 813; Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the regulations and case law.

Sixth, the ALJ considered that Dr. Harden reported, on January 8, 2008, that Plaintiff was significantly non-complaint with her medications. Tr. 264. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). The court finds that the ALJ's consideration of Plaintiff's non-compliance is based on substantial evidence and that it is consistent with the regulations and case law.

Seventh, the ALJ considered that, although Plaintiff testified that she needed surgery because

her "hand was tingling" in all fingers, her tingling would have existed in 2004-2005, during which period she worked a job requiring heavy and frequent lifting. Tr. 15. As considered by the ALJ, following rib and back pain in February 2007, Plaintiff was found to have a rib fracture and possible thoracic scoliosis. She, however, was released to return to work at the full range of light duty in February 2007. Tr. 19, 251-52. When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years."). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the regulations and case law.

Eighth, the ALJ considered that, although Plaintiff testified regarding the absence of frequent headaches, Plaintiff's counsel argued that the ALJ should disregard this testimony because Plaintiff has a severe psychiatric illness. The ALJ considered, in this regard, that precedent for doing so does not exist in Social Security law; that doing so would call into question all of Plaintiff's testimony; that doing so would be poor public policy; and that Plaintiff's allegations must be considered in view of the objective medical evidence. The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the regulations and case law.

Ninth, the ALJ considered that Catherine Hirner, M.S.W., L.C.S.W., Plaintiff's therapist, reported that Plaintiff had problems dealing with grief following the death of a friend and with the end of her relationship with a boyfriend. Tr. 17. Ms. Hirner reported, on March 18, 2008, that Plaintiff had "stressors in her life in the [prior] two years"; that these stressors included "the sale of a long-

held family farm on which she [lived] and the break up of a long-term relationship with her boyfriend"; that these stressors compounded Plaintiff's depression; and that "being laid off after an extended leave of absence from work [was] yet another significant loss and life change for [Plaintiff]." Tr. 271. Situational depression, however, is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Moreover, the ALJ considered that Plaintiff's having a long-term relationship with another person suggested that Plaintiff was capable of appropriate social interaction, despite her claim to the contrary. Tr. 17-18. The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

In conclusion, the court finds that the ALJ's credibility determination, in its entirety, is based on substantial evidence and consistent with the regulations and case law.

## C.      Opinion of Dr. Harden:

Dr. Harden was Plaintiff's treating psychiatrist. Plaintiff contends that the ALJ should have given controlling weight to Dr. Harden's opinion that Plaintiff was unable to work since December 2007. Pursuant to a psychiatric evaluation, Dr. Harden reported, on December 22, 2009, that he first saw Plaintiff in January 2005 for a psychiatric evaluation; that, despite her ongoing medication, Plaintiff continued "to experience severe and recurring episodes of depression which last[ed] for weeks to months with severe diminishment of energy, motivation, concentration and overall enjoyment of life"; that Plaintiff presented in "a timely fashion"; that she had satisfactory grooming; that she "showed *no abnormalities of gait or movement and maintained a comfortably seated posture*"; that she showed "*interactive eye contact and logical thought process and no speech*

*eccentricities*"; that her mood was sad; that "screening of her cognitive function" showed that Plaintiff was *fully oriented*; that Plaintiff was able to identify "correct locations for both state and nationally renowned landmarks"; that Plaintiff's "concentration was such that she was able to quickly and correctly mentally reverse her own zip code"; that her "capacity for abstract thought was such that she readily abstractly and interpreted a familiar proverb"; that her *judgment* was *appropriate*; that she was able to recollect three facts following a three minute delay; and that her "remote recall was such that she was able to recollect only the most recent three of the past five presidents of the United States." Dr. Harden further reported that Plaintiff denied hallucinations, delusions, obsessions and compulsions and that Plaintiff said she had diminished energy, motivation, and concentration; that she had panic attacks "a couple of times per week which [were] usually unprovoked"; and that she had suicidal thoughts "a couple of times in the past four weeks but [had] no suicidal intention." Dr. Harden opined, based on a reasonable degree of medical certainty, that, because of her mental illnesses, Plaintiff's ability to appropriately interact with the pubic, to make judgments on complex work related decisions, and to respond appropriately to usual work situations and to changes in the work routine were markedly impaired; that her ability to interact appropriately with co-workers and supervisors was extremely impaired; that her ability to make judgments on simple work related decisions and to understand and remember complex instructions and complete them were moderately impaired; that her ability to understand, remember and carry out simple instructions was unimpaired; that he agreed with Plaintiff's assertion that "her disabilities began in mid-December 2007"; and that he agreed with Plaintiff that December 2007 was "the initiation of her being disabled from maintaining employment." Tr. 355.

Dr. Harden also checked boxes on a Medical Source Statement of Ability to Do Work-

Related Activities (Mental) that Plaintiff had *no restrictions* in regard to understanding and remembering and carrying out simple instructions and that she had *mild restrictions* in regard to complex instructions and decisions and that Plaintiff had marked or extreme limitations in regard to all areas of interacting appropriately with supervisors, co-workers, and the public. Tr. 418-19. Additionally, Dr. Harden reported on the Medical Source Statement that Plaintiff "professe[d] unprovoked sad moods" with tearfulness which distressed her "and likely others and disrupt[ed] her concentration and task completion." Tr. 419. He further stated that Plaintiff's disability began on December 17, 2007. Tr. 419.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes, 275 F.3d at 725 (internal quotation marks omitted). "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous

treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th

Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of

treating doctors are not conclusive in determining disability status and must be supported by medically

acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will

be given to an opinion when a medical source presents relevant evidence, such as medical signs, in

support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006)

(holding that where a treating physician's notes are inconsistent with his or her RFC assessment,

controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th

Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with other substantial evidence").

      "Although a treating physician's opinion is entitled to great weight, it does not automatically

control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961

(8th Cir. 2001). A treating physician's checkmarks on a form, however, are conclusory opinions

which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at

805-06; Hogan 239 F.3d at 961; SSR 96-2p, (July 2, 1996). Where diagnoses of treating doctors are

not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need

not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ

may "discount or even disregard the opinion of a treating physician where other medical assessments

are supported by better or more thorough medical evidence, or where a treating physician renders

inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013.

      First, the ALJ did take into consideration some of the limitations imposed by Dr. Harden, in

that, upon finding Plaintiff could perform light work prior to June 24, 2009, the ALJ acknowledged that Plaintiff could perform unskilled work with *occasional interaction* with co-workers and the general public. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions."). See also Martise v. Astrue, 641 F3d 909, 926 (8th Cir.2010) (quoting Ellis, 392 F.3d at 994).

Second, upon not giving controlling weight to Dr. Harden's opinion, the ALJ considered that, despite his stating that Plaintiff became disabled in December 2007, Dr. Harden reported that Plaintiff stopped working because she was laid off, not because she became disabled. See Medhaug, 578 F.3d at 816-17; Browning, 958 F.2d at 821.

Third, as discussed above in regard to Plaintiff's credibility and as considered by the ALJ, Dr. Harden reported that Plaintiff was non-compliant with medications she took for her mental disorders. See Eichelberger, 390 F.3d at 589.

Fourth, as discussed above in regard to Plaintiff's credibility and as considered by the ALJ, Plaintiff's daily activities were inconsistent with Dr. Harden's conclusion that Plaintiff became disabled in December 2007. See Eichelberger, 390 F.3d at 590; Dunahoo, 241 F.3d at 1038; Onstead, 962 F.2d at 805; Murphy, 953 F.2d at 386; Benskin, 830 F.2d at 883.

Fifth, in Dr. Harden's December 22, 2009 evaluation, Dr. Harden acknowledged that he relied

on Plaintiff's self-reporting of many of her symptoms, including her panic attacks. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

Sixth, to the extent Dr. Harden made checkmarks on a Medical Source Statement to indicate Plaintiff's limitations and her ability to work, as explained above, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at 805-06; Hogan 239 F.3d at 961; S.S.R. 96-2p, (July 2, 1996).

Seventh, to the extent Dr. Harden opined that Plaintiff was unable to work, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

Eighth, the ALJ considered the inconsistencies between Dr. Harden's December 2009 opinion that Plaintiff became disabled in December 2007 and his treatment notes. In particular, in February 2008, Dr. Harden noted that Plaintiff said that "overall" she thought she was "spending slightly less time in depression." Tr. 293. On April 30, 2008, Dr. Harden reported that Plaintiff said that "maybe" she was feeling "somewhat better" and that she was not "as easily tearful." Tr. 292. On June 1, 2008, Dr. Harden reported that Plaintiff had "been able to appropriately manage significant emotional stress. Tr. 290. On August 28, 2008, Dr. Harden reported that Plaintiff said her depression was "no worse & maybe better." Tr. 287. On March 3, April 30, June 1, and August 28, 2008, Dr. Harden reported that Plaintiff's thought process was logical; that her appearance/behavior

was casual and calm; that her movement/ gait was steady; that her attitude was cooperative; and that she was oriented. In particular, the ALJ considered that it was not until February 2008, that the record mentions that Plaintiff's bipolar disorder prevented her from working. Tr. 17, 425, 293. The ALJ further considered that, although Dr. Harden reported in the December 2009 Medical Source Statement that Plaintiff had a marked restriction in regard to social functioning, his treatment notes are silent as to such a marked restriction. See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)).

Ninth, the ALJ was not bound by conclusory statements of total disability by Dr. Harden because the ALJ identified good reason for not accepting Dr. Harden's opinion. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In conclusion, the court finds that the ALJ gave proper weight to Dr. Harden's opinion that Plaintiff became disabled in December 2007 and that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the regulations and case law.

## C.     The Opinion of Ms. Hirner, Plaintiff's Therapist:

Plaintiff contends that the ALJ should have given controlling weight to Ms. Hirner's opinion as stated in a March 18, 2008 letter, in which Ms. Hirner wrote that Plaintiff was not experiencing relief for her mental condition, despite Dr. Harden's "innovative and aggressive treatment"; that Plaintiff's bi-polar disorder caused her "major difficulties in being able to go to work"; that she had experienced personal stressors in the prior two years, which compounded her depression; that

Plaintiff's family's not living close to her and Plaintiff's living in a rural area socially isolated Plaintiff further; that Plaintiff's being laid off was a significant life change for her; and that she hoped that Plaintiff would meet the criteria for disability because it was "definitely needed due to her inability to work." Tr. 271.

First, as discussed above in regard to Plaintiff's credibility, Ms. Hirner credited, to a large extent, Plaintiff's depression based on Plaintiff's circumstances, including a death, the breakup with a boyfriend, and her geographic isolation. See Dunahoo, 241 F.3d at1039-40 (holding that situational depression is not disabling).

Second, Ms. Hirner, as a therapist, is not an acceptable medical source, and, as such, her opinion is not controlling. See 20 C.F.R. §§ 404.1513(a), 416.913(a); Lacroix, 465 F.3d at 885-87 (citing Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir.2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.'").

Third, the ALJ did take Ms. Hirner's opinion into consideration. The ALJ specifically stated that, although Ms. Hirner was not an acceptable medical source, given the "extreme lack of mental health treatment notes, [her] records play[ed] an integral part" in the ALJ's decision. Tr. 20. The regulations state that "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, [an ALJ] may use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Therapists are specifically listed as "other" medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work. Id. §§ 404.1513(d)(1), 416.913(d)(1); Lacroix, 465 F.3d at 885-87. Because Ms. Hirner is a therapist, she is an "other" medical source who may present evidence of the severity of a

claimant's impairment and the effect of the impairment on the claimant's ability to work. Id. (citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)).

In conclusion, the court finds that the ALJ gave proper weight to Ms. Hirner's opinion; that the ALJ's decision, in this regard, is supported by substantial evidence; and that it is consistent with the regulations and case law.

**C.      Plaintiff's Mental Impairments:**

Plaintiff contends that the ALJ should have found that she was disabled, commencing December 1, 2007, due to a mental condition. As set forth above, the ALJ found Plaintiff disabled, as of June 24, 2009, due to *physical impairments* and that, prior to that date she was not disabled. Thus, the ALJ found that Plaintiff did not have any disabling mental impairments.

20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

To the extent Plaintiff claims she should have been found disabled merely because she has mental conditions, the mere existence of a mental condition is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981).

Upon considering whether a claimant is disabled due to a mental impairment, an ALJ should follow the sequential process for evaluating mental impairments as set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. § 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § § 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's

mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

Upon finding that Plaintiff did not suffer from a disabling mental disability, the ALJ considered the medical evidence, as required by the first step of a mental impairment analysis, as well as Plaintiff's functional limitations. See Pratt, 956 F.2d at 835; 20 C.F.R. §§ 404.1520a(b)(1), 404.1508. In particular, the ALJ considered that Plaintiff was diagnosed and treated for bipolar depression and that there were "sparse mental health records covering the documentation of [Plaintiff's] functional abilities." Tr. 16. The ALJ also considered Dr. Harden's and Ms. Hirner's notes and evaluations, as discussed above. Tr. 16-17. The court notes that, on March 10, 2009, when Plaintiff presented needing four to six months "worth of documented history so she [could] get lap band surgery," Plaintiff was alert, well groomed, and in no acute distress; that "not present [were] Anxiety, Depression, Inability to Concentrate, Mood changes, Suicidal Ideation, Suicidal Planning ... and Sleep Problems"; that her insight was "appropriate concerning matters relevant to self"; that Plaintiff's thought content was "normal with ability to perform basic computations and apply abstract reasoning"; that her ability to concentrate and attention span were normal; that her mood and affect were normal; that Plaintiff "display[ed] appropriate judgment regarding every day activities and [her] judgment [was] appropriate in social situations"; and that Plaintiff had bipolar disorder, unspecified. Tr. 342-43. Even on June 16, 2009, when Plaintiff presented with neck pain,

Dr. Zimmerman reported that Plaintiff was alert, in mild distress, well groomed, and oriented. Tr. 337.

Consistent with the requirement of § 404.1520(a), after considering the medical evidence, the ALJ then proceeded to consider Plaintiff's functional limitations as evidenced by activities of daily living; her social functioning; her persistence or pace; and her deterioration or decompensation in work or work-like settings as required by 20 C.F.R. § 404.1520a(b)-(c). Tr. 16. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (holding that while an ALJ is not limited to considering medical evidence of a mental impairment, the ALJ is required to consider at least some supporting evidence from a professional). In regard to Plaintiff's activities of daily living, the ALJ considered Plaintiff's daily activities as discussed above and noted that Plaintiff was able to rise in the morning, make herself breakfast, and maintain an interest in music and reading. Tr. 17. The ALJ concluded that Plaintiff had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. 16. In conclusion, the court finds that the ALJ's determination that Plaintiff did not suffer from a disabling mental impairment during the relevant period is supported by substantial evidence and that it is consistent with the regulations and case law.

## D.     Plaintiff's RFC:

As discussed above, the ALJ found that prior to June 24, 2009, Plaintiff had the RFC to perform light work, with the exception that she could understand, remember and carry out unskilled work with occasional interaction with co-workers and the public. Plaintiff contends that the ALJ's pre June 24, 2009 RFC determination is not based on substantial evidence.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or

28

mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer, 245 F.3d at 703. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d at 863).

Consistent with the above stated requirements, the ALJ in the matter under consideration considered Plaintiff's credibility regarding the duration and intensity of her symptoms prior to June 24, 2009, and concluded that she was not fully credible. Indeed, the ALJ was required to include only Plaintiff's credible limitations in her RFC. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

Additionally, the ALJ considered Plaintiff's medical records before reaching her determination of Plaintiff's RFC. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id.

Moreover, the ALJ considered Plaintiff's work-related abilities on a function by function

basis, and concluded she could perform light work with certain restrictions prior to June 24, 2009.

See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).

Significantly, the regulations define light work as 'involv[ing] lifting no more than 20 pounds at a

time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b).

Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a

workday, the full range of light work requires standing or walking, off and on, for a total of

approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6.

To the extent Plaintiff argues that the ALJ did not factor her obesity into the pre June 24,

2009 RFC determination and/or that the ALJ's consideration of Plaintiff's obesity was not consistent

with the regulations and case law, Plaintiff is incorrect.

20 C.F.R.,Pt. 404, Subpt. P, App. 1, 1.00, Q, states:

Effects of obesity. Obesity is a medically determinable impairment that is often
associated with disturbance of the musculoskeletal system, and disturbance of this
system can be a major cause of disability in individuals with obesity. The combined
effects of obesity with musculoskeletal impairments can be greater than the effects
of each of the impairments considered separately. Therefore, when determining
whether an individual with obesity has a listing-level impairment or combination of
impairments, and when assessing a claim at other steps of the sequential evaluation
process, including when assessing an individual's residual functional capacity,
adjudicators must consider any additional and cumulative effects of obesity.

SSR 02-01p, 2000 WL 628049, at *2-5 (Sept. 12, 2002), states, in relevant part, that:

Obesity is a complex, chronic disease characterized by excessive
accumulation of body fat. Obesity is generally a combination of factors (e.g.,
genetic, environmental, and behavioral). . . .

We will consider obesity in determining whether:
        The individual has a medically determinable impairment. . . .
        The individual's impairment(s) is severe. . . .
        The individual's impairment(s) meets or equals the requirements of

a  listed impairment in the listings. . . .
The individual's impairment(s) prevents him or her from doing past relevant work. . . .

If an individual has the medically determinable impairment obesity that is "severe" as described  [above], we may find that the obesity medically equals a listing. . . . We may find in a title II claim, or an adult claim under title XVI, that the obesity results in  a finding that the individual is disabled based on his or residual functional capacity (RFC), age, education, and past work experience.  However, we will also consider the possibility of coexisting or related conditions, especially as the level of obesity increases.  . . .

There is no specific weight or BAI that equates with a "severe" or a "not severe" impairment.  . . . Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe. . . .

Because there is no listing for obesity, we will find that an individual with obesity may meet the requirements of a listing if he or she has another impairment that, by itself, "meets" the requirements of a listing.  We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.  For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.

Upon concluding that Plaintiff was not disabled prior to June 24, 2009, the ALJ did not dispute Plaintiff's allegation that she was obese.  In fact, the ALJ found that Plaintiff's obesity was severe. Tr. 13. To the extent the ALJ did not specifically address the effect of Plaintiff's obesity on her other allegedly disabling conditions, the ALJ did address medical evidence relevant to Plaintiff's headaches, knee and back pain, sleep apnea, and mental and other conditions as discussed above. Only after doing so did the ALJ conclude that Plaintiff did not have an impairment or "combination of impairments" that met or medically equaled a listed impairment. Tr. 15.  Thus, Plaintiff's obesity did not increase the severity of her coexisting or related impairments to the extent that the combination of her impairments met the requirements of a listing. See SSR 02-01p at *2-5.  As such,

the court finds that the ALJ's consideration of Plaintiff's obesity is consistent with SSR 02-01p. To the extent that the ALJ failed to specifically address the effect of Plaintiff's obesity on her other conditions, the court finds that this does not affect the outcome of this case and that, therefore, such a deficiency in decision writing does not require reversal. See Karlix, 457 F.3d at 746 ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)).

Significantly, the ALJ considered the record as a whole when determining Plaintiff's RFC. See Tucker, 363 F.3d at 783. To the extent the ALJ may not have specifically addressed any particular statement in Plaintiff's medical records, this does not mean that the ALJ did not consider the omitted matter. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). In any case, an ALJ is not required to discuss every piece of evidence submitted. See Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Because the record supports the ALJ's "overall conclusion," error on her part does not necessarily require reversal. See Karlix, 457 F.3d at 746. In conclusion the court finds that the ALJ's pre June 24, 2009 RFC determination is based on substantial evidence and that it is consistent with the regulations and case law.

**E.      Testimony of a Medical Advisor:**

Although Plaintiff contends that the ALJ should have obtained the testimony of a medical

advisor regarding Plaintiff's disability onset date, SSR 83-20 (1983), at *2, upon which Plaintiff relies, provides that, for disabilities of non-traumatic origin, a claimant's onset date should be determined based on a consideration of her allegations, work history, and medical and other evidence. SSR 83-20 also provides that an onset date must have a legitimate basis and that "[a]t the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred." Where the medical evidence regarding the onset date is ambiguous, an ALJ is required to obtain the testimony of a medical advisor. Karlix, 457 F.3d at 747 (8th Cir. 2006) (citing Grebenick v. Chater, 121 F.3d 1193, 1200 (8th Cir. 1997)).

In the matter under consideration the evidence establishing Plaintiff's onset date is not ambiguous. The ALJ, moreover, cited specific medical information and relied on Plaintiff's testimony upon determining that Plaintiff's onset date was June 24, 2009. In particular, the ALJ considered that a June 26, 2009 MRI of Plaintiff's cervical spine showed "degenerative disc disease and spondylosis at C5-7" and that "this record is consistent with [Plaintiff's] complaints of pain and discomfort from June of 2009 through the present." Tr. 21, 350. Additionally, on June 26, 2009, notes from Monroe City Family Practice reflect that Plaintiff presented with neck pain, the onset of which was acute and which started about one week earlier. Tr. 335. Upon finding that Plaintiff's onset date was June 24, 2009, the ALJ also considered that her orthopedic surgeon reported, on September 24, 2009, that Plaintiff's degenerative joint disease was "getting severely worse the past three months with pain in her knees." Tr. 21, 351. As such, the court finds that the ALJ's determination that Plaintiff became disabled on June 24, 2009, is supported by substantial evidence and consistent with the requirements of the regulations and case law and that the ALJ was not required to obtain the testimony of a medical advisor.

**F.     The ALJ's Hypothetical to a VE:**

At Step 5 of the sequential evaluation process, if the ALJ finds that a claimant is unable to perform past relevant work, the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2).  If the claimant is found to have non-exertional impairments that diminish her capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a VE to establish that there are jobs in the national economy that the claimant can perform. Robinson, 956 F.2d at 839.  The ALJ in the matter under consideration found that from her alleged onset date, December 17, 2007, and until June 24, 2009, Plaintiff could perform light work with the non-exertional limitations described above.  The ALJ also found that during this period Plaintiff could not perform her past relevant work.  As such, as required by the regulations, the ALJ solicited the testimony of a VE after determining Plaintiff's pre June 24, 2009 RFC. See id.

In response to a hypothetical posed by the ALJ, the VE testified that there was work nationally which could be performed by a person of Plaintiff's age and education and with the pre June 24, 2009 RFC which the ALJ assigned to Plaintiff.   This work included hand packer, assembler, and hand sorter. Tr. 50.  The hypothetical included all of Plaintiff's limitations which the ALJ found credible.  The court has found, above, that the ALJ's credibility and RFC determinations are based on substantial evidence.

To the extent Plaintiff asserts that the ALJ's hypothetical did not include all of Plaintiff's *alleged* exertional and non-exertional limitations, an ALJ posing a hypothetical to a VE is not

required to include all of a claimant's limitations, but only those which she finds credible. Martise, 641 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix, 465 F.3d at 889); Guilliams, 393 F.3d at 804 (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania, 879 F.2d at 445; Rautio, 862 F.2d at 180. The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). As such, the ALJ posed a proper hypothetical to the VE.

Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Martise, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix, 465 F.3d at 889; Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). As such, the court finds that the VE's

testimony is based on substantial evidence; that the ALJ properly relied on the VE's testimony; and that the ALJ's ultimate finding that Plaintiff was not disabled prior to June 24, 2009 is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff was not disabled prior to June 24, 2009.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 11,

**IT IS FURTHER ORDERED** that a separate Judgment, incorporating this Memorandum Opinion, shall be entered in favor of Defendant and against Plaintiff.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this 21st day of August, 2012.          UNITED STATES MAGISTRATE JUDGE